UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT R. WOLFE,

Case No. No. 16-13620

Plaintiff,

District Judge Gershwin A. Drain

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final

decision of Defendant Commissioner denying his application for Disability Insurance

Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI

of the Social Security Act.   The parties have filed cross-motions for summary judgment

which have been referred for a Report and Recommendation pursuant to 28 U.S.C.

§636(b)(1)(B).   For the reasons set forth below, I recommend that Defendant's Motion for

Summary Judgment be GRANTED [Docket #18] and that Plaintiff's Motion for Summary

Judgment be DENIED [Docket #13].

# I. PROCEDURAL HISTORY

On August 12, 2013 and September 4, 2013 respectively, Plaintiff filed applications for SSI and DIB, alleging disability as of January 30, 2013 (Tr. 145, 152). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on November 13, 2014 in Lansing, Michigan (Tr. 44). Administrative Law Judge ("ALJ") Thomas L. Walters presided. Plaintiff, represented by Bryan Christie, testified, as did Vocational Expert ("VE") Joanne Pfeiffer (Tr. 48-64, 69-74). Joshua Winkel, Plaintiff's case manager, also testified (Tr. 65-69). On December 18, 2014, ALJ Walters determined that Plaintiff was capable of a significant range of unskilled, exertionally light work (Tr. 26-40). On August 31, 2016, the Appeals Council declined to review the administrative decision (Tr. 1-6). Plaintiff filed suit in this Court on October 11, 2016.

# II. BACKGROUND FACTS

Plaintiff, born December 21, 1980, was just short of his 34th birthday at the time of the administrative decision (Tr. 40, 145). His application states that he completed eighth grade and worked previously as a bus boy/dishwasher, busser, laborer, and pizza cook (Tr. 181). He alleges disability as a result of muscle spasms, acid reflux, Gastroesophageal Reflux Disease ("GERD"), depression, and cognitive, spinal, and throat problems (Tr. 180).

## A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He left school after seventh grade (Tr. 48). He was held back in kindergarten twice (Tr. 49). He attempted but failed to obtain a GED (Tr. 49). He was "partially dyslexic" (Tr. 49). He was divorced and had a daughter, 10, who lived with his former wife (Tr. 49). His income was currently limited to food stamps (Tr. 49). He did not have an address of his own, but received mail at his grandfather's house (Tr. 50). He worked as a busser/dishwasher for around 10 years until he was terminated in January, 2013 (Tr. 50). He was let go after experiencing auditory hallucinations, anxiety, agitation, and increased back pain (Tr. 52).

Plaintiff began experiencing hallucinations at the age of 10 and had been on and off psychotropic medication most of the time since (Tr. 53). Following the January, 2013 termination, he attempted to make money by selling scrap metal, but soon after experienced a back injury (Tr. 54). He used a cane on the recommendation of his physician (Tr. 55). He experienced spinal pain from his neck downward (Tr. 56). The back pain caused sleep disturbances requiring him to take daytime naps (Tr. 56-57). He was unable to stand more than 20 minutes before experiencing leg spasms (Tr. 56). He held a driver's license but felt "safer" when someone else drove (Tr. 57). He did not have legal problems (Tr. 57).

Plaintiff was unable to lift more than 10 pounds (Tr. 58). He experienced "good" days around once a week, at which time his was not in pain or having audio hallucinations (Tr. 59). In contrast, on a "bad" day, he was "barely" able to get out of bed due to physical limitations, mental problems, and discouraging comments from others (Tr. 59). He was currently living with his girlfriend and her mother (Tr. 59). His household activities were

limited to drying and putting away dishes (Tr. 60). He did not have other friends (Tr. 60). During his working years, he was able to fix cars, fish, play, pool, attend social events, and bowl (Tr. 61). He was now unable to walk for more than one city block (Tr. 61).

Plaintiff currently took Neurontin, Tramadol, and Zanaflex for his back condition (Tr. 61). He also took Abilify for his psychological conditions (Tr. 62). He experienced the medication side effects of dizziness, nausea, and shortness of breath on a transient basis (Tr. 63-64). He opined that he would be unable to perform his former job due to his "mental state" and the job's lifting requirements of up to 70 pounds on a regular basis (Tr. 64).

### B. The Case Manager's Testimony

Joshua Winkel, Plaintiff's case manager, testified as follows:

Mr. Winkel's job was to assist individuals in completing paperwork, applying for Social Security benefits, housing, and coordinating physical and mental health care (Tr. 65-66). He had been Plaintiff's case manager for only two months but had reviewed Plaintiff's records for the past two years (Tr. 66). Mr. Winkel was attempting to obtain "more aggressive" therapy for Plaintiff (Tr. 67). Mr Winkel believed that Plaintiff was not capable of competitive employment due to sleep disturbances and hallucinations (Tr. 68). He believed that the hallucinations could "command [Plaintiff] to do something violent," citing medical records stating that Plaintiff had "punched walls in the past" (Tr. 69). He agreed with Dr. Deflon's treating opinion that Plaintiff would miss up to four days of work each month (Tr. 69).

### C. Medical Records[1]

#### 1. Records Related to Plaintiff's Treatment

In November, 2012, Plaintiff was treated for food bolus impaction after eating turkey (Tr. 239-240). He underwent the removal of food without complications (Tr. 236). He was advised to avoid beef, chicken, turkey, and pork and follow a "soft bland diet" for four weeks (Tr. 240). February, 2013 records by P.C. Patel, M.D. note Plaintiff's report of radiating middle and lower back pain (Tr. 292). Dr. Patel noted an unremarkable examination of the spine (Tr. 292). Another examination from the same month noted normal balance and gait (Tr. 283). March, 2013 records note an unremarkable spinal examination and that Plaintiff was "alert and oriented" without "unusual anxiety or evidence of depression" (Tr. 279). In April, 2013, Plaintiff sought treatment for chronic left knee pain (Tr. 291). David Williamson, M.D. noted that the left knee appeared "unremarkable" (Tr. 291). In May, 2013, Plaintiff was diagnosed with mild gastritis and mild diffuse esophagitis (Tr. 235). An EMG of the lower right extremity from the same month was unremarkable (Tr. 287). A June, 2013 MRI of the lumbar spine showed "mild diffuse L5-S1 disc bulge" with only moderate stenosis (Tr. 286). The study was negative for herniation or other abnormalities (Tr. 286). An examination from the same month noted a steady gait but "strange shakes" of the left side while walking (Tr. 270).

---

[1]Records significantly predating the alleged onset date of January 30, 2013, while reviewed in full, are omitted from the present discussion.

July, 2013 records note Plaintiff's report of worsening back pain (Tr. 265). The records note that his "gait appeare[d] ataxic but unclear if intentional" (Tr. 267). He exhibited a normal affect and mood (Tr. 267). Plaintiff reported anxiety and concentrational problems due to "multiple social stressors and feeling overwhelmed with constantly racing thoughts" (Tr. 266-267). Pain management treating records from August, 2013 note Plaintiff's report of middle and lower back pain for the past year (Tr. 258). Plaintiff reported that physical therapy exacerbated his pain (Tr. 258). He exhibited a normal gait and muscle tone (Tr. 259-260). September, 2013 records note Plaintiff's report of depression and anxiety (Tr. 262). Plaintiff reported that marijuana did not improve his back condition and that he could "get opiates off [the] streets" (Tr. 264). Plaintiff declined an offer for Selective Serotonin Reuptake Inhibitors ("SSRIs") for depression, stating that they were "garbage" (Tr. 263).

In November, 2013, Plaintiff reported worsening knee and back pain (Tr. 365). Plaintiff reported that he was limited to walking 10 blocks at a time (Tr. 365). He exhibited a normal gait (Tr. 361). The same month, Bernardo Rodriguez, M.D. examined Plaintiff in response to reports of back pain and leg tremors, noting "suspicio[n] of psychogenic tremors, and that the examination responses were "inconsistent and the findings disappear with distraction" (Tr. 313). Dr. Rodriguez concluded that Plaintiff did not require further neurologic work up but would benefit from a "psychiatric evaluation" (Tr. 313).

Treating notes from the following month note Plaintiff's report of anxiety, depression, concentrational problems, and hallucinations (Tr. 352). Plaintiff reported that he was hearing voices telling him to hurt other people (Tr. 352). He exhibited normal judgment but was advised to "go directly to have an evaluation for inpatient psychiatric admission" (Tr. 354).

February, 2014 treating records note an improvement of psychological symptoms (Tr. 338). Plaintiff reported good results from Abilify (Tr. 338). Plaintiff reported continued back pain and burning on the right side of his back (Tr. 329). September, 2014 records by Umesh Verma, M.D. noted Plaintiff's denial of depression or concentrational problems (Tr. 318). In October, 2014, Dr. Verma noted a right-sided limp but 5/5 strength of the lower extremities (Tr. 316). Plaintiff appeared alert and fully oriented (Tr. 316).

In October, 2014, Dr. DeFlon increased Plaintiff's dose of Abilify (Tr. 376). Dr. DeFlon noted that Plaintiff experienced "increasing volume of . . . voices" (Tr. 374). Later the same month, Dr. DeFlon completed an assessment of Plaintiff's psychological work-related abilities, finding that Plaintiff was seriously limited in the ability to maintain attention for two hours, maintain attendance, work in coordination with others, accept criticism, deal with stress, deal with "stress of semiskilled and skilled work, and use public transportation (Tr. 372-373). Dr. Deflon found that due to internal stimuli, Plaintiff "struggle[d] with appropriate behavior due to paranoia . . ." (Tr. 373). He found that "extensive travel" was limited "due to chronic physical health issues" (Tr. 373). He found that Plaintiff would be expected to miss more than four days of work each month due to "chronic physical, mental

health conditions and disrupted sleep patterns" (Tr. 373).

The same month, case manager Joshua Winkel opined that Plaintiff was unable to work due to auditory and visual hallucinations, insomnia, suicidal ideation, paranoia, isolation, mood swings, and chronic physical health impairments. Mr. Winkel found that Plaintiff would be "inconsistent and could be a danger to co-workers if his symptoms become too intense" (Tr. 371).

## 2. Non-Treating Records

In October, 2013, psychologist Craig S. Brown, Ed.D. performed a consultative examination, noting Plaintiff's report of comprehension problems and depression (Tr. 294). Plaintiff noted a family history of bipolar disorder and comprehension problems (Tr. 294). He expressed interest in talk therapy (Tr. 294).

Dr. Brown noted Plaintiff's belief that "he has mental health problems" including depression, anxiety, and anger (Tr. 294). Plaintiff reported that he heard "voices" and had only two friends (Tr. 295). He reported spending his time playing video games, going to lunch with his family on occasion, listening to music, television, and doing "a few chores" (Tr. 297). He reported visiting his daughter twice a month (Tr. 297). He reported hearing voice saying that he should kill himself (Tr. 299).

Dr. Brown noted normal attentiveness, manners, and grooming (Tr. 297). He noted below average verbal expression and organization of thought (Tr. 298). Plaintiff exhibited deficiencies in calculations (Tr. 300). Dr. Brown diagnosed Plaintiff with bipolar disorder

with depression and psychotic features, anxiety, a panic disorder, and mild agoraphobia (Tr. 303-304). He found that Plaintiff's prognosis was "poor" and that he required "aggressive psychiatric management and therapy" (Tr. 304). He found that Plaintiff would be able to handle his own finances (Tr. 304).

The following month, Thuy Nguyen, D.O. performed a consultative physical examination, noting Plaintiff's report of spinal pain radiating into the lower right extremity with spasms (Tr. 305). Dr. Nguyen noted good effort, observing a slight limp and the ability to walk without the use of assistive devices (Tr. 306). A neurological examination was otherwise unremarkable (Tr. 306-308).

Also in November, 2013, Blaine Pinaire, Ph.D. performed a non-examining review of the psychological records on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 81). Later the same month, Quan Nguyen, M.D. reviewed the treating and consultative records pertaining to the physical complaints, finding that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for around six hours in an eight-hour workday; and push and pull without limitation (Tr. 83). Dr. Nguyen found that Plaintiff could climb stairs/ramps, balance, stoop, and crawl on a frequent basis; climb ladders, ropes, or scaffolds occasionally; and kneel and crouch without limitation (Tr. 83). Dr. Nguyen found no other physical limitations (Tr. 83-84).

### 3. Records Submitted After the ALJ's December 18, 2014 Decision

In December, 2013, psychiatrist Cassius Deflon, M.D. noted a flat affect, "judgment and insight . . . somewhat compromised by . . . depression" but denial of auditory hallucinations (Tr. 385). He assigned Plaintiff a GAF of 45, noting reports of auditory and visual hallucinations[2] (Tr. 386). April, 2014 mental health records make reference to an appointment with Dr. DeFlon (Tr. 409). Plaintiff reported that he continued to hear voices, experience sleep disturbances, and had poor self esteem (Tr. 409).

In April, 2014, Plaintiff reported that his house was to be condemned and that his girlfriend had untreated mental health problems (Tr. 408). June, 2014 mental health records state that Plaintiff and his brother were being evicted from their rental home (Tr. 406). He declined offers to procure subsidized housing (Tr. 404, 406). He reported that he and his brother were moving into an apartment (Tr. 398). He reported a "slight improvement" in the severity of hallucinations (Tr. 396). Dr. DeFlon noted "no evidence of psychosis," noting that "[c]onsidering all the stressors," Plaintiff was doing "quite well" (Tr. 382). Mental health records from October, 2014 note Plaintiff's report of "paranoia, isolation, anger/mood swings, poor sleep . . . [and] cognitive impairments" (Tr. 391).

---

[2]A GAF score of 41 to 50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34 (4th ed. 2000).

## D. Vocational Testimony

VE Pfeiffer classified Plaintiff's past work as that of a "kitchen aid," characterizing the work as unskilled and exertionally medium[3] (Tr. 70). ALJ Walters then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [A] residual functional capacity for a range of light work that involved simple, routine, repetitive tasks. Free of fast paced production requirements. Only involving simple work related decisions, and routine work place changes. There would also be no working around moving machinery, or unprotected heights. Based on those limitations, would there be unskilled, light jobs? (Tr. 71).

The VE testified that the above limitations would allow for the work of a night cleaner (9,000 positions in the lower peninsula of Michigan); cleaner/polisher (8,000); and inspector (20,000) (Tr. 71). She added that none of the above positions would require even occasional contact with the public (Tr. 71). The VE testified that if the same individual (including the restriction on less than occasional contact with the public) were additionally limited by a restriction to sedentary work, he could perform the job of surveillance systems

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

monitor (1,000) and inspector (10,000) (Tr. 72). The VE testified that if the same individual were required to miss two or more days of work each month, or, be off task 20 percent or more of the time, all competitive employment would be precluded (Tr. 72). She stated further that if the same individual were required to use a cane to ambulate, only the night cleaner job would be eliminated (Tr. 73). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 73).

### E.  The ALJ's Determination

Citing the medical transcript, ALJ Walters found that Plaintiff experienced the severe impairments of "Degenerative disc disease of the lumbar spine, [GERD], achalasia (narrowing of the throat), depression, anxiety and comprehension disorder" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 28-29). He found that Plaintiff experienced mild restriction in activities of daily living and moderate restriction in social functioning and concentration, persistence, or pace (Tr. 30). ALJ Walters determined that Plaintiff had an RFC for light work with the following additional restrictions:

> [H]e is limited to the performance of simple, routine, and repetitive tasks. These tasks should be free of fast-paced production requirement and only involving simple work related decisions and routine work place changes. He cannot work around moving machinery or unprotected heights. He should have no more than occasional contact with the public (Tr. 31).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform the light work of a night cleaner, cleaner/polisher, and inspector (Tr. 39, 71).

The ALJ discounted Plaintiff's professed degree of physical and psychological limitation. He noted that May, 2013 electro-diagnostic studies showed no radiculopathy or neuropathy and likewise, that an MRI of the lumbar spine showed only mild disc bulging with only moderate stenosis (Tr. 32). The ALJ cited December, 2013 treating records showing 5/5 motor strength in all extremities and suspicion of "psychogenic tremors" (Tr. 33). The ALJ noted that Dr. Brown's October, 2013 mental status examination showed normal speech and contact with reality (Tr. 34).

The ALJ accorded "limited weight" to Dr. Deflon's October 30, 2014 assessment, noting that Dr. Deflon's opinion regarding Plaintiff's physical problems was "outside the realm of his expertise" (Tr. 37). He also rejected Dr. Deflon's findings to the extent that the treating psychiatrist opined that Plaintiff was disabled (Tr. 37). He found that the "severity of [Dr. Deflon's] findings was not supported by the totality of the evidence" (Tr. 37).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. The Treating Physician Analysis

Plaintiff argues that the ALJ erred by according only "little" or "limited" weight to Dr. DeFlon's October, 2014 assessment. *Plaintiff's Brief,* 10-15, *Docket #13,* Pg ID 462 (*citing* Tr. 37). Relying on SSR 96-2p, Plaintiff also contends that the ALJ did not provide an adequate rationale for discounting the treating psychiatrist's opinion. *Id.* at 11-14 (*citing* 1996 WL 374188, at *5 (July 2, 1996))[4].

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

---

[4]

The administration rescinded SSR 96-2p on March 27, 2017. *See Rescission of Social Security Rulings* 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 17, 2017). Under the new rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. The "new rules, however, apply only to claims filed on or after March 17, 2017." *Hancock v. CSS,* 2017 WL 2838237, at *8 (W.D.Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)). Because current Plaintiff filed his claim well before March 17, 2017, SSR 96-2p applies.

record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). In the presence of contradicting substantial evidence however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)); SSR 96–2p, 1996 WL 374188, *5 (1996). In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

As discussed above, treating psychiatrist Dr. DeFlon found that Plaintiff was seriously limited in the ability to maintain attention for two hours, maintain attendance, work in coordination with others, accept criticism, deal with stress, deal with the "stress of semiskilled and skilled work," and use public transportation (Tr. 372-373). Dr. Deflon found further that due to internal stimuli, Plaintiff "struggle[d] with appropriate behavior due to paranoia . . ." and that "extensive travel" was limited "due to chronic physical health issues" (Tr. 373). He found that Plaintiff would be expected to miss more than four days of work each month due to "chronic physical, mental health conditions and disrupted sleep patterns" (Tr. 373).

In giving "little weight" to Dr. DeFlon's opinion, the ALJ found as follows:

Dr. DeFlon indicated that chronic psychological and physical health conditions prevented the claimant from working. On average, the claimant would miss more than four days of work per month. In terms of the claimant['s] mental ability needed to do unskilled work, the claimant was "seriously limited" when maintaining attention, attendance, and when working in close proximity with others. He was 'seriously limited' responding appropriately to supervisors, dealing with normal work stress, as well as dealing with stress of semi-skilled an skilled work. However, Dr. DeFlon's opinion considered physical as well as mental impairments, which is outside the realm of his expertise. Further statements of disability are reserved for the Commissioner and the severity of his findings was not supported by the totality of the evidence (Tr. 37).

First, Plaintiff takes issue with the ALJ's characterization of Dr. DeFlon's assessment as an opinion of "disability." *Plaintiff's Brief* at 12. However, Dr. DeFlon's statement that "[c]hronic psychological and physical health conditions interfere or prevent [Plaintiff] from working 'normal' hours . . . " (interpreted by the ALJ to state that Plaintiff was incapable of full-time gainful employment) can reasonably construed as a "disability" opinion (Tr. 37, 373). As such, the ALJ did not err in rejecting that portion of the assessment on the basis that "the issue of disability is reserved solely to the Commissioner..." (Tr. 37); *see* SSR 96-2p, *supra,* at *2.

Likewise, the ALJ did not err in discounting Dr. DeFlon's findings to the extent that he found that Plaintiff was limited by physical as well as mental conditions (Tr. 37). *See Rincon v. CSS*, 2016 WL 922945, at *3 (E.D.Mich. March 11, 2016)(Psychologist's findings regarding claimant's *physical* limitations properly rejected by the ALJ as outside her "area of expertise"). Dr. DeFlon's reliance on the allegations of physical limitations in making

his assessment is of particular concern in this case, given that the treating records strongly undermine Plaintiff's professed degree of physical limitation. June, 2013 physical treating records note "strange" leg shakes of unknown etiology (Tr. 270). Despite Plaintiff's demonstration of leg shakes, an EMG of the lower right extremity was unremarkable (Tr. 287). An MRI of the lumbar spine from the same month showed only a mild disc bulge and moderate stenosis (Tr. 286). A treater examining Plaintiff the following month questioned whether Plaintiff intentionally employed an antalgic gait (Tr. 267). November, 2013 records state that Plaintiff demonstrated possibly "psychogenic tremors" which disappeared when he was distracted (Tr. 313). While Plaintiff now asserts that his mental condition was "exacerbated by his physical complaints," *Plaintiff's Brief* at 12 (Tr. 313), the 2013 records instead suggest that a psychiatric work-up was advised on the basis that Plaintiff was exaggerating his physical problems. While Plaintiff points out that Dr. DeFlon's finding is consistent with the ALJ's determination that Plaintiff experienced "severe" physical impairments, the term "severe" in the Social Security disability context is applied to any condition creating more than "*de minimis*" work-related limitation. *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. February 22, 2008)(*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)).

Dr. DeFlon's partial reliance on Plaintiff's allegations of physical limitation in finding disability level limitation provides a proper basis for discounting the treating opinion. For example, Dr. DeFlon's finding that Plaintiff would miss more than four days of work

each month, if adopted, would direct a finding of disability (*see* VE's testimony Tr. 72).

However, Dr. DeFlon stated that this finding was based on both Plaintiff's mental and *physical* health conditions. Because Plaintiff's allegations as to his degree of physical limitations are not well supported, the ALJ did not err in concluding Dr. DeFlon's assessment was comprised by his reliance on Plaintiff's unfounded claims of physical limitation.

Further, the ALJ permissibly rejected Dr. DeFlon's assessment on the independent basis that it "was not supported by the totality of the evidence" (Tr. 37). This finding is prefaced by the ALJ's lengthy discussion of the treating and consultative records showing that Plaintiff was able to drive and shop, was in contact with reality, and could handle his own finances (Tr. 34-35, 297, 304). The ALJ cited February, 2014 treating records showing that Plaintiff's mental condition had improved with medication and that he was fully oriented with normal insight and judgment (Tr. 35, 338). The ALJ noted that Plaintiff's condition was deemed "stable" as of June, 2014, despite records from that time showing a plethora of social and financial stressors (Tr. 35, 318).

The ALJ's findings are consistent with my own review of the record showing mostly mild and moderate psychological limitation. Despite financial social stressors, July, 2013 records show a normal affect and mood (Tr. 267). Dr. DeFlon's October, 2014 assessment of disability level mental and physical limitation stands at odds with treatment records by Dr. Verma for the same period noting 5/5 strength in the lower extremities and Plaintiff's denial

depression or concentrational problems (Tr. 316, 318). Because the ALJ's rejection of Dr. DeFlon's assessment is well supported, well explained, and did not rely on an erroneous or slanted interpretation of the record, the administrative determination should remain undisturbed.

**B. Evidence Submitted After the ALJ's December 18, 2014 Decision**

On August 31, 2016, the Appeals Council added 36 pages of evidence to the transcript at the request of Plaintiff's counsel (Tr. 2, 5, 377-412).

When as here, the Appeals Council denies a claimant's request for a review of an application based on new material, but nonetheless adds the newer evidence to the transcript, the district court cannot consider the new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan*, 2 F.3d 692, 696–696 (6th Cir. 1993). The sixth sentence of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...." As such, this Court may consider the newer evidence only for purpose of determining whether a "Sentence Six" remand is appropriate.

Plaintiff improperly cites the new material at length in making his argument for remand under the fourth sentence of § 405(g), *see Plaintiff's Brief* at 5-7, 15, and he has not even offered good cause for its tardy submission, as required for consideration under a sixth

sentence remand. Further, even assuming that Plaintiff could provide "good cause" for the failure to timely submit the newer evidence, he cannot show that it is "material" to the ALJ's decision. To show that the newer evidence is material, the claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Secretary of HSS*, 865 F.2d 709, 711 (6th Cir. 1988).

The newly submitted April, 2014 psychiatric treating records state that Plaintiff continued to hear voices and experience sleep disturbances and poor self esteem (Tr. 406, 408). However, the same records suggest that his psychological problems were largely attributable to pressing housing problems and his girlfriend's untreated mental health issues (Tr. 406, 408). Despite financial, interpersonal, and employment problems, Plaintiff reported a "slight improvement" in the hallucinations (Tr. 396). In June, 2014, Dr. DeFlon observed "no evidence of psychosis" and that "[c]onsidering all the stressors," Plaintiff was doing "quite well" (Tr. 382). Treating notes show that Plaintiff declined an offer of subsidized housing and instead, made a plan to share apartment space with his brother (Tr. 398). Because the newer records do not suggest greater psychological limitation than those considered by the ALJ, they would not be likely to change the ALJ's finding that Plaintiff was capable of a limited range of unskilled work. Accordingly, a Sentence Six remand is not warranted.

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's personal, physical, or psychological challenges. However, because the ALJ's decision was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: November 26, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 26, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen
